**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN**

Randall E. Dill,

      *Plaintiff*,

      v.

International Business Machines
Corporation,

      *Defendant*.

Case No. 1:24-cv-00852-HYJ-PJG

Hon. Hala Y. Jarbou

Magistrate Judge: Phillip J. Green

**ORAL ARGUMENT REQUESTED**

**DEFENDANT'S BRIEF IN SUPPORT
OF ITS MOTION TO DISMISS**

i

# TABLE OF CONTENTS

CONCISE STATEMENT OF REASONS ....................................................................................1

INTRODUCTION .....................................................................................................................1

BACKGROUND ......................................................................................................................2

STANDARD OF REVIEW ........................................................................................................5

ARGUMENT ...........................................................................................................................7

     I.      Plaintiff Has Failed to Allege He Was Treated Differently Than Similarly-Situated Employees.............................................................................................7

     II.     IBM's Commitment to Diversity Does Not Support Plaintiff's Claims...............11

     III.    In the Alternative, Plaintiff Fails to Plead the "Background Circumstances" to Support a "Reverse-Discrimination" Claim........................................................15

CONCLUSION.......................................................................................................................17

i

# TABLE OF AUTHORITIES

Page(s)

<u>**Cases**</u>

*16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*,
  727 F.3d 502 (6th Cir. 2013) ................................................................ 7

*Ames v. Ohio Dep't of Youth Servs.*,
  87 F.4th 822 (6th Cir. 2023) ........................................................... 2, 15

*Ames v. Ohio Dep't Youth Servs.*,
  No. 23-1039, 2024 WL 4394128 (U.S. Oct. 4, 2024) (pending) ................. 2

*Anderson v. Kroger Co. of Mich.*,
  2015 WL 7075948 (E.D. Mich. Nov. 13, 2015) ....................................... 10

*Arendale v. City of Memphis*,
  519 F.3d 587 (6th Cir. 2008) ................................................................ 2

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................ 6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ....................................................................... 5, 10

*Bernstein v. St. Paul Cos. Inc.*,
  134 F. Supp. 2d 730 (D. Md. 2001) ..................................................... 15

*Bissett v. Beau Rivage Resorts*,
  442 F. App'x 148 (5th Cir. 2011) ....................................................... 12

*Bradley v. Gannett Co.*,
  2024 WL 3905817 (E.D. Va. Aug. 20, 2024) ....................................... 12

*Briggs v. Potter*,
  463 F.3d 507 (6th Cir. 2006) ................................................................ 7

*Carey v. Foley & Lardner LLP*,
  577 F. App'x 573 (6th Cir. 2014) ......................................................... 7

*Coffey v. Equian*, No. 20-5751,
  2021 U.S. App. LEXIS 3021 (6th Cir. Feb. 3, 2021) ........................... 9, 11

*De La Pena v. Metro. Life Ins. Co.*,
  552 F. App'x 98 (2d Cir. 2014) .......................................................... 16

*Donaldson v. DeJoy*,
    2024 WL 3493870 (6th Cir. May 1, 2024) ................................................................ 15

*Downs v. Bel Brands USA, Inc.*,
    613 F. App'x 515 (6th Cir. 2015) ................................................................ 6, 9, 11

*Dzibela, v. BlackRock Inc.*,
    2024 WL 4349813 (D.N.J. Sept. 30, 2024) ................................................ 11, 13, 14

*Foster v. Michigan*,
    573 F. App'x 377 (6th Cir. 2014) ................................................................ 14

*Han v. Univ. of Dayton*,
    541 F. App'x 622 (6th Cir. 2013) .......................................................... 5, 6, 9, 10, 11

*Harkola v. Energy E. Util Shared Servs.*, No. 09-CV-6318 (MAT),
    2011 WL 3476265 (W.D.N.Y. Aug. 9, 2011) ................................................ 15

*Hatcher v. Hegira Programs, Inc.*,
    2020 WL 1083719 (E.D. Mich. Mar. 6, 2020) ................................................ 10

*HDC, LLC v. City of Ann Arbor*,
    675 F.3d 608 (6th Cir. 2012) ................................................................ 6

*Jahn v. Bay Mills Cmty. Coll.*,
    2023 WL 5524877 (W.D. Mich. Aug. 28, 2023) ................................................ 10

*Johnson v. Metro. Gov't of Nashville & Davidson Cnty.*,
    502 F. App'x 523 (6th Cir. 2012) ................................................................ 12

*Jones v. Bernanke*,
    493 F. Supp. 2d 18 (D.D.C. 2007) ................................................................ 15

*Keys v. Humana Inc.*,
    684 F.3d 605 (6th Cir. 2012) ................................................................ 6

*League of United Latin Am. Citizens v. Bredesen*,
    500 F.3d 523 (6th Cir. 2007) ................................................................ 6

*Masaebi v. Arby's Corp.*,
    852 F. App'x 903 (6th Cir. 2021) ................................................................ 8, 9

*McCormick v. Gasper*,
    2022 WL 16586621 (6th Cir. Nov. 1, 2022) ................................................ 12, 14

*Mlynczak v. Bodman*,
   442 F.3d 1050 (7th Cir. 2006) ........................................................................ 14

*Mohamed v. Stratosphere Quality*,
   2022 WL 19826868 (6th Cir. Dec. 20, 2022).............................................. 9

*Opsatnik v. Norfolk S. Corp.*,
   2008 WL 763745 (W.D. Pa. Mar. 20, 2008) ............................................... 15

*Reed v. Agilent Techs., Inc.*,
   174 F. Supp. 2d 176 (D. Del. 2001) ............................................................. 15

*Rondigo, L.L.C. v. Twp. of Richmond*,
   641 F.3d 673 (6th Cir. 2011) ......................................................................... 2

*Saint Francis Coll. v. Al-Khazraji*,
   481 U.S. 604 (1987) ....................................................................................... 6

*Sloan v. Earnest*,
   2024 WL 2882594 (W.D. Mich. May 20, 2024) ......................................... 6

*Sloan v. Earnest*,
   2024 WL 2880578 (W.D. Mich. June 7, 2024) ........................................... 6

*Smith v. Wrigley Mfg. Co., LLC*,
   749 F. App'x 446 (6th Cir. 2018) ............................................................ 9, 10

*Tickles v. Johnson*,
   805 F. App'x 204 (4th Cir. 2020) ................................................................. 16

*Toth v. City of Toledo*,
   480 F. App'x 827 ........................................................................................... 16

*Uppal v. Hosp. Corp. of Am.*,
   482 F. App'x 394 (11th Cir. 2012) ............................................................... 16

*Wright v. Murray Guard, Inc.*,
   455 F.3d 702 (6th Cir. 2006) ......................................................................... 6

## **Statutes**

42 U.S.C. § 1981 ............................................................................................ 1, 5, 6

42 U.S.C. § 2000e .......................................................................................... 1, 5, 6

**<u>Rules</u>**

Fed. R. Civ. P. 8 ................................................................................................................... 5

Fed. R. Civ. P. 12 ........................................................................................................ 1, 17

## CONCISE STATEMENT OF REASONS FOR DISMISSAL

1.      Plaintiff fails to allege facts supporting a plausible inference that IBM terminated him for discriminatory reasons because he does not allege he was treated less favorably than any female or minority employees; provides no support for his bald assertions that IBM employed unlawful "quotas;" does not and cannot allege that the diversity programs about which he complains had anything to do with him or his termination; and otherwise fails to displace the most plausible inference: that IBM terminated Plaintiff because of poor performance and chronic underutilization, not his race or sex.

2.      Alternatively, Plaintiff fails to plead "background circumstances" supporting an inference that Defendant discriminates against the white, male majorities to which he belongs.

## INTRODUCTION

Plaintiff Randall E. Dill's Complaint, boiled down to its essence, alleges: (1) Plaintiff is a Caucasian male; (2) Defendant International Business Machines Corporation ("IBM") had a diversity and inclusion program focused on executive hiring and promotion; (3) IBM terminated Plaintiff after his consulting work dried up; and thus (4) IBM must have engaged in unlawful race and gender discrimination against him.  Plaintiff's allegations are fatally flawed as a factual matter, but even accepting them as true, Plaintiff has failed to plausibly plead a violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e, *et seq.*) or the Civil Rights Act of 1866 (42 U.S.C. § 1981).

Under Federal Rule of Civil Procedure 12(b), Plaintiff is required to plausibly plead facts showing he has a right to relief; he must offer something more than mere speculation.  But Plaintiff pleads no facts suggesting he was treated less favorably than any female or minority employees, meaning he has not plausibly alleged discrimination, just like numerous other plaintiffs whose

cases have been dismissed at this stage.  Nor does he plead any facts plausibly indicating that there are "background circumstances to support the suspicion that the defendant is that unusual employer who discriminates against the majority," as is required to state a claim for reverse discrimination in this Circuit. *Ames v. Ohio Dep't of Youth Servs.*, 87 F.4th 822, 825 (6th Cir. 2023) (quoting *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008)), *cert. granted*, --- S. Ct. ---, No. 23-1039, 2024 WL 4394128 (U.S. Oct. 4, 2024) (pending).  The far more reasonable inference from Plaintiff's allegations is that Plaintiff was terminated because he—and a large number of his colleagues—were underutilized.

On that basis, IBM respectfully requests the Court to dismiss Plaintiff's Complaint.

## BACKGROUND[1]

**Plaintiff's employment with IBM.**  Plaintiff is a Caucasian male who worked as a Senior Managing Consultant ("SMC") in IBM's Simpler Consulting business unit, beginning in 2016 and ending on October 31, 2023.  Compl. ¶¶ 8, 21-22, 56, 78, ECF No. 1, PageID.3, 5, 9, 12.  SMCs were expected to "accelerate sales, deliver client engagements, and build … market eminence." Compl. Ex. C (Senior Managing Consultant Position Description) at 1, ECF No. 1-3, PageID.32.[2] The "Role and Responsibilities" for this position provide that SMCs are to be "always . . . learning" and "looking for ways to improve and better serve their clients."  *Id.* at 1-2, PageID.32-33.  As an SMC, Plaintiff needed to be a "change agent" with a "[d]emonstrated capacity for developing and sustaining key relationships."  *Id.* at 2, PageID.33.  Indeed, all IBM Consulting employees are

---

[1]     IBM accepts as true the allegations in the Complaint solely for purposes of this Motion.

[2]     The Court can consider materials referenced in and attached to the Complaint for purposes of a Motion to Dismiss because they are incorporated by reference, and IBM requests that the Court do so here. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680-81 (6th Cir. 2011).

expected to be "growth minded, always staying curious, open to feedback and learning new information and skills to constantly transform themselves[.]"  *Id.* at 3, PageID.34.

Plaintiff's role required implementing these growth-minded and sales skills with IBM clients.  Compl. ¶¶ 23-25, ECF No. 1, PageID.5.  His last consulting project, which ran over a period of four years, had ended by January 2023.  *Id.* ¶ 32, PageID.6; *see also* Compl. Ex. D (Performance Improvement Plan), ECF No. 1-4, PageID.38 (indicating Plaintiff had low utilization since January 2023).  Thereafter, Plaintiff was not renewed by the Army, his previous client, or selected by another client.  *See id.* ("Team member not selected for Client placement").

As Plaintiff's Performance Improvement Plan ("PIP") documents, his utilization dropped below 18 days per month—the minimum required for an employee at his level—for more than seven months.  *Id.*; *see also* Compl. ¶ 40, ECF No. 1, PageID.7.  Between January 1, 2023 and July 29, 2023, Plaintiff was utilized for a total of only fifteen days.  Compl. Ex. D, ECF No. 1-4, PageID.38.  Citing Plaintiff's extended low utilization, his lack of skills needed to "meet[] Client demand," and the fact that he had "not [been] selected for [ ] placement" by a client, his supervisor placed him on a PIP.  Compl. ¶¶ 37, 42, ECF No. 1, PageID.6, 7; *see also* Compl. Ex. D, ECF No. 1-4, PageID.38.  The PIP described goals of identifying "the necessary self-improvement steps or actions to better position [Plaintiff] to deliver at full utilization" in order to achieve full utilization by November 1, 2023.  Compl. ¶¶ 44, 46, ECF No. 1, PageID.7; *see also* Compl. Ex. D, ECF No. 1-4, PageID.38.  It also outlined a detailed Action Plan with eight recommendations, including to "formulate and implement a plan to fill skill gaps," "Secure Industry Badge(s)," "develop and sale new business," "perform internal marketing," "[f]ind an open seat," and "[c]onduct weekly progress and coaching sessions [with his supervisor.]"  Compl. Ex. D, ECF No. 1-4, PageID.38.

Plaintiff alleges that he attempted three of the eight recommendations.  He devised a personal "marketing plan," applied to open IBM positions, and requested "resources" to pursue a client lead.  Compl. ¶¶ 50-52, ECF No. 1, PageID.8.  Despite weekly progress and coaching sessions over a two-month period with his supervisor and the additional assistance of another employee, Plaintiff failed to secure an engagement.  *Id.* ¶¶ 50-53, PageID.8.  As a result, his employment was terminated on October 31, 2023.  *Id.* ¶ 56, PageID.9.

**IBM's aspirational workplace goals.**  IBM aims to "ensure employees from diverse backgrounds are engaged, can be their authentic selves, build skills and grow their careers."  IBM 2022 Annual Report 16 (2023) (cited in Compl. ¶ 60, ECF No. 1, PageID.9); *see also* IBM 2023 Annual Report 15 (2024) (similar) (*id.*).  Such a workplace, in IBM's view, "serves as a catalyst for heightened innovation, agility, and overall performance… [and] fuels business growth."  IBM 2023 Annual Report 16 (2024) (*id.*).  In other words, a diverse workplace serves a clear business goal.

Although diversity is important to IBM, its executive compensation practices target five key objectives—none of which mentions race or gender balancing.  *See* IBM 2024 Notice of Annual Meeting and Proxy Statement 36 (2024) (listing: aligning IBM leaders with investors; ensuring sustained business performance; attracting high quality senior leaders; motivating high performance; and reflecting individual and team performance) (cited in Compl. ¶ 60, ECF No. 1, PageID.9).  In addition to their base salaries, certain eligible U.S. senior executives are eligible for incentive compensation through an Annual Incentive Program ("AIP") that recognizes individual contributions through a funding pool.  *Id.* at 35-36.

The Compensation Committee of IBM's Board of Directors ultimately determines the funding pool for executive compensation based on company financials, recommended adjustments

from the CEO and Chairman, and an optional diversity modifier (the "Optional Diversity Modifier"). *Id.* at 35-37. The Optional Diversity Modifier is "based on [IBM's] progress in creating and developing a diverse ***executive*** population." *Id.* (emphasis added). It "can result in a 5 point reduction, *no impact*, or 5 point increase to the AIP scoring." *Id.* (emphasis added). In 2023 (the year of Plaintiff's termination), the annual changes to executive representation for women globally, and for Black and Hispanic executives in the United States, resulted in *no impact* from the Optional Diversity Modifier. *Id.* (emphasis added).

**This Lawsuit.** Plaintiff asserts that his termination was not the result of his failure to secure a new consulting assignment, but instead was caused by discriminatory animus. *See, e.g.*, Compl. ¶¶ 72-78, 86, 95, ECF No. 1, PageID.12, 14, 15. He alleges that his supervisor and other superiors in his unit "stood to financially benefit" from his termination, pointing to IBM corporate documents, policies that apply to executives (not consultants), and out-of-context comments from the CEO some two years prior to Plaintiff's termination. *Id.* ¶¶ 60-61, 78, PageID.9-10, 12. Plaintiff filed a charge of discrimination with the EEOC on July 11, 2024, and received a right to sue letter shortly thereafter. *See* Compl. ¶ 58, ECF No. 1, PageID.9; *id.* Ex. A, ECF No. 1-1, PageID.20-25. Plaintiff filed a three-count complaint against IBM on August 20, 2024, seeking damages, equitable relief, and a declaratory judgment for race and gender discrimination in violation of 42 U.S.C. § 2000e, *et seq.* and 42 U.S.C. § 1981.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8, a complaint's factual allegations must be "plausible" and "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). While the Court must accept factual allegations as true at this stage, the allegations must "do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *Han v. Univ. of Dayton*, 541 F. App'x 622, 625

(6th Cir. 2013) (quoting *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original)).  A "sheer possibility that a defendant has acted unlawfully" is insufficient to withstand dismissal.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Title VII prohibits employers from discharging or discriminating against any individual because of that individual's "race, color, religion, sex, or national origin[.]"  42 U.S.C. § 2000e-2. Section 1981 prohibits race-based consideration in making and enforcing employment contracts. 42 U.S.C. § 1981(a).[3]  At the pleading stage, claims under both statutes are reviewed under the same standard.  *See Keys v. Humana Inc.*, 684 F.3d 605, 610 (6th Cir. 2012).  While Plaintiff does not need to plead a *prima facie* case to survive a motion to dismiss, *see id*., he still must plead "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Downs v. Bel Brands USA, Inc.*, 613 F. App'x 515, 518-19 (6th Cir. 2015); *see also HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012); *Sloan v. Earnest*, No. 1:23-CV-723, 2024 WL 2882594, at *3 (W.D. Mich. May 20, 2024) (complaint must "contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.") (citation omitted), *report and recommendation adopted*, No. 1:23-CV-723, 2024 WL 2880578 (W.D. Mich. June 7, 2024) (Jarbou, C.J.).

For claims brought under both Title VII and section 1981, a Plaintiff must demonstrate that "(1) he or she was a member of a protected class; (2) he or she suffered an adverse employment action; (3) he or she was qualified for the position; and (4) he or she was ... treated differently than similarly-situated, non-protected employees."  *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707

---

[3]    Any attempt to seek relief under section 1981 for sex discrimination, *see* Compl. ¶ 105, ECF No. 1, PageID.16, should be dismissed outright, as that statute is limited to race-based discrimination.  42 U.S.C. § 1981(a); *see also Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987).

(6th Cir. 2006) (citation omitted).  In addition to these four elements, the Sixth Circuit has held

that a Plaintiff asserting a claim of "reverse discrimination" must also show: (5) "that background

circumstances support the suspicion that the defendant is that unusual employer who discriminates

against the majority."  *Carey v. Foley & Lardner LLP*, 577 F. App'x 573, 581 (6th Cir. 2014)

(citing *Briggs v. Potter,* 463 F.3d 507, 517 (6th Cir. 2006) (internal quotation marks omitted)).

## ARGUMENT

Nothing in the Complaint supports the leap of logic that forms the crux of Plaintiff's

Complaint: that he was terminated due to IBM's general diversity and inclusion policies, rather

than his failure to meet the basic requirements of his position.  Instead, Plaintiff provides mere

personal beliefs and conjecture, which are insufficient to support an inference of discrimination.

*16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013).  The

result is that Plaintiff fails to plausibly allege that his termination was related to either his race or

his sex.

As discussed in detail below, Plaintiff (I) fails to plead any facts suggesting less favorable

treatment than other employees in his division who were similarly underperforming or

underutilized; (II) fails to connect his termination to IBM's diversity goals, which are not unlawful;

and (III) fails to allege circumstances suggesting discrimination against members of the Caucasian

male majorities.  Each of these failures is fatal to Plaintiff's Complaint.

## I.    Plaintiff Has Failed to Allege He Was Treated Differently Than Similarly-Situated Employees.

Plaintiff fails to allege facts plausibly showing he was terminated due to his race or sex.

Rather, Plaintiff baldly alleges he "began to realize" that his placement on the PIP was a "pretext

to force him out of the company due to IBM's stated quotas related to sex and race."  Compl. ¶ 55,

ECF No.1, PageID.9.  In doing so, he provides "no basis for h[is] belief that h[is] managers were

biased against [Caucasian men], nor any facts allowing the court to infer that employment decisions, including [his placement on the PIP and] firing, were motivated by h[is race or sex]." *Masaebi v. Arby's Corp.*, 852 F. App'x 903, 909 (6th Cir. 2021).  Plaintiff's naked assertions of discrimination are insufficient to state a claim.  *Id.*

As Plaintiff concedes, he did not meet the metrics required in his PIP.  As set forth in the PIP, "full utilization" for a consultant like Plaintiff is at least 18 days each month.  Compl. Ex. D, ECF No. 1-4, PageID.38.   Plaintiff failed to meet this utilization requirement *for more than six months* before being placed on the PIP.  *Id.*  His "[u]tilization [from] January 1 to July 29, 2023" was "15 days."  *Id*.  And, as the PIP explained, he was not selected by his former client for placement in a future engagement.  *Id*. ("Team member not selected for Client placement"). Plaintiff makes no allegation that he achieved or was able to achieve full utilization (or anywhere near full utilization).  The Army's alleged previous approval of his performance, *see* Compl. ¶ 33, ECF No. 1, PageID.6, on one project does not raise any inference regarding the legitimacy of the PIP; rather, on its face, the PIP related to Plaintiff's lack of utilization and failure to develop new skills following the conclusion of that project.  *See* Compl. Ex. D, ECF No. 1-4, PageID.38.

Plaintiff's conclusory allegations that his placement on the PIP was pretextual are not plausible, as required to survive this Rule 12(b)(6) Motion.  Absent from the Complaint are all of the usual facts that employment discrimination plaintiffs typically assert to clear the hurdle of stating a discrimination claim.  For example, the Complaint does not include any allegations describing Plaintiff's coworkers or their treatment.  Rather, all Plaintiff alleges is that at the time he was placed on the PIP, "over half of his division was 'on the bench' or awaiting a long-term assignment due to a lack of client work for the division."  Compl. ¶ 41, PageID.7.  Plaintiff knows the race and gender of his peers from his division, including those who, like him, lacked work and

were thus "on the bench" with Plaintiff.  But Plaintiff does not allege any information about these other employees.  Nor does he allege that IBM treated any similarly-situated non-Caucasian or non-male employees more favorably.

Under the well-established law of this Circuit, Plaintiff's total failure to allege that members of other racial and gender groups received more favorable treatment is fatal to the plausibility of his claims.  Time and again, the Sixth Circuit has affirmed dismissal where a plaintiff claiming discrimination fails to provide facts about other employees or "any example of how those employees were treated differently."  *Smith v. Wrigley Mfg. Co., LLC*, 749 F. App'x 446, 448 (6th Cir. 2018); *see also Han*, 541 F. App'x at 627; *Downs*, 613 F. App'x at 518-19; *Coffey v. Equian*, No. 20-5751, 2021 U.S. App. LEXIS 3021, at *5-6 (6th Cir. Feb. 3, 2021); *Mohamed v. Stratosphere Quality*, No. 22-3345, 2022 WL 19826868, at *2 (6th Cir. Dec. 20, 2022); *Masaebi*, 852 F. App'x at 908-11.

The Sixth Circuit's ruling in *Han* drives home the defects in Plaintiff's allegations.  There, an Asian-American male professor claimed he was given a negative evaluation by a review committee and ultimately terminated due to his race and gender.  *Han*, 541 F. App'x at 627.  As to race, the plaintiff alleged only that a white male was hired as an adjunct professor to teach one of the plaintiff's classes and that the review committee treated the plaintiff less favorably because of his race.  *Id.*  These allegations lacked the "specific facts necessary to make his [race] discrimination claims plausible."  *Id.*  And as to gender, his claim was "especially weak" because he was replaced by a male and the review committee had a mixed gender composition.  *Id.*  The plaintiff's allegations of worse treatment than similarly-situated female employees were implausible without "specifics regarding who those employees were or how they were treated

9

differently." *Id.* The Sixth Circuit affirmed dismissal because these allegations did nothing more than "create speculation or suspicion." *Id.* (citing *Twombly*, 550 U.S. at 553-54).

Similarly, in *Smith*, the Sixth Circuit affirmed dismissal of age discrimination claims where the plaintiff "mentioned that younger employees who were 'performing on a par' with her were still employed when she was fired, [but] she offered no names, ages, or qualifications for the younger employees who were treated differently, or any examples of how their treatment differed." 749 F. App'x at 448 (internal citation omitted); *see also Jahn v. Bay Mills Cmty. Coll.*, No. 2:22-CV-233, 2023 WL 5524877, at *2 (W.D. Mich. Aug. 28, 2023) (granting motion to dismiss where employee failed to include information about similarly-situated employees).

Plaintiff does even less than the plaintiffs in *Han*, *Smith* and *Jahn*. While those plaintiffs at least touched on the characteristics of other individual employees, Plaintiff does not identify the demographic traits of any coworker, much less allege that he was replaced by anyone at all. *See Hatcher v. Hegira Programs, Inc.*, No. 19-cv-11720, 2020 WL 1083719, at *5 (E.D. Mich. Mar. 6, 2020) (dismissing race discrimination claim where plaintiff did not allege, and could not confirm at hearing, that she "was replaced by a non-African American employee"). The Court is thus left guessing about any coworkers' continuing employment status and their races and genders.

This lack of specificity means the Complaint cannot survive a Motion to Dismiss pursuant to Rule 12(b)(6). *See, e.g.*, *Anderson v. Kroger Co. of Mich.*, No. 15-12253, 2015 WL 7075948, at *8 (E.D. Mich. Nov. 13, 2015) (dismissing race discrimination claims where plaintiff "failed to allege the race of any person mentioned in her Amended Complaint beyond herself, [and] failed to set forth any facts indicating the identity or position of any similarly situated non-African-American person being treated differently than she"). The Court cannot infer discrimination from

allegations that Plaintiff "was good at his job," is a white male, and was terminated.  *Han*, 541 F. App'x at 627.

While Plaintiff need not plead every element of the *prima facie* case, he still must plead "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Downs*, 613 F. App'x 518-19 (citation omitted); *see also Coffey*, 2021 U.S. App. LEXIS 3021, at *5-6 (affirming dismissal because "[t]he complaint is devoid of any factual allegations suggesting that [decisionmaker] or [company] in general were biased against [plaintiff] due to her age or gender," and plaintiff specifically failed to "plead the identities of any of those individuals, how many of them there were, or what reasons were given to them for their terminations."); *Dzibela, v. BlackRock Inc.*, No. 23-02093 (RK) (JBD), 2024 WL 4349813, at *7 (D.N.J. Sept. 30, 2024) (motion to dismiss on "reverse discrimination" claim granted where plaintiff's "subjective belief that he was replaced by individuals with lesser qualifications but were  diverse, without more, is insufficient to [plausibly infer] discrimination in Plaintiff's termination").  Plaintiff has failed to plead that he was treated differently than similarly-situated employees here, so his Complaint must be dismissed.  *Han*, 541 F. App'x at 627.[4]

## II.    IBM's Commitment to Diversity Does Not Support Plaintiff's Claims.

Plaintiff cannot salvage his claims by pointing to IBM's diversity goals for three reasons: (1) a commitment to diversity is not unlawful; (2) Plaintiff's allegation that IBM had a "quota system," Compl. ¶ 72, ECF No. 1, PageID.12, is based on bald assertions; and (3) the diversity efforts about which Plaintiff complains had *nothing to do with Plaintiff*, who has not pled that he was even within their scope.

---

[4]    Plaintiff's sex discrimination claims are "especially weak" considering the only other individuals identified in the Complaint are male.  *Id*.

First, the mere fact that IBM works to promote diversity does not remotely suggest unlawful conduct.  The Sixth Circuit has recognized that "statements reflecting a desire to improve diversity do not equate to direct evidence of unlawful discrimination."  *Johnson v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 502 F. App'x 523, 535 (6th Cir. 2012).  That conclusion does not change even where the goal is to mirror the population, *id.*, or to hire a certain percentage of diverse candidates, *McCormick v. Gasper*, No. 22-1033, 2022 WL 16586621, at *4 (6th Cir. Nov. 1, 2022).  Courts around the country have agreed that it is permissible to commit to "maintaining a workforce that reflects the diversity of the community."  *See, e.g.*, *Bissett v. Beau Rivage Resorts Inc.*, 442 F. App'x 148, 152-53 (5th Cir. 2011), *cert. denied*, 565 U.S. 1270 (2012); *Bradley v. Gannett Co.*, No. 1:23-CV-1100 (RDA/WEF), 2024 WL 3905817, at *1, *5 (E.D. Va. Aug. 20, 2024) (finding policy aiming to achieve "racial and gender parity with the diversity of our nation, throughout our work force" is not discriminatory).

Second, Plaintiff's allegations that IBM's diversity programs included "race- and sex-based quotas" are based on bald, unsupported labels that the Court need not credit for purposes of a motion to dismiss.  Compl. ¶ 72, ECF No. 1, PageID.12.  Nowhere does the Complaint describe any quotas or say what they were, to whom they applied, how they were implemented, or when they were in effect, or provide any other facts about the supposed quotas.  For example, although Plaintiff says that IBM maintains a discriminatory compensation scheme in the form of the AIP's Optional Diversity Modifier, Plaintiff does not even attempt to explain what the "diversity modifier" is or to whom it applied, let alone how it constituted an unlawful quota system.  *See, e.g.*, *id.* ¶ 60, PageID.9.  Absent any details, the Plaintiff is left with mere allegations that IBM had diversity goals, which do not provide a predicate for this lawsuit.  *See Bradley*, 2024 WL 3905817, at *5 (granting motion to dismiss "reverse discrimination" claim where defendant's "inclusion

report" included mere "goals and does not (i) define specific quotas for any specific position or the workforce overall; (ii) refer to any caste system designating a hierarchical preference for certain racial groups over others; or (iii) provide specific plans for how its diversity goals are to be achieved").

Third, Plaintiff has utterly failed to connect IBM's diversity efforts to himself or his termination. To the contrary, Plaintiff's allegations about IBM's corporate policies actually *refute* his speculative "belief" that the policies resulted in his termination. Compl. ¶ 73, ECF No. 1, PageID.12. Plaintiff's allegations about the AIP's Optional Diversity Modifier are a prime example. *Id.* ¶ 60, PageID.9-10. As the documents incorporated in the Complaint make clear, the Optional Diversity Modifier assesses IBM's progress in diversifying only the "*executive* population." IBM 2024 Notice of Annual Meeting and Proxy Statement 36 (emphasis added) (cited in Compl. ¶ 60). Plaintiff does not allege he was an executive or that his employment otherwise somehow fell within the AIP. Nor could he. Moreover, while Plaintiff identifies three superiors who were supposedly motivated to terminate him, he does not allege that these individuals were of the class of executives who were eligible for compensation under the AIP. *See* Compl. ¶ 78. The allegations of the Complaint thus provide no basis for concluding that the Optional Diversity Modifier had anything to do with Plaintiff or his employment, and it does not support Plaintiff's claims. *See Dzibela*, 2024 WL 4349813, at *6 (dismissing "reverse discrimination" claims because plaintiff failed to plausibly allege he was in a leadership position within the scope of defendant's diversity program).

The same goes for the rest of Plaintiff's allegations about IBM's diversity efforts. On their face, these allegations consistently focus on recruitment and promotion, not termination of existing employees. *See, e.g.*, Compl. ¶ 76, ECF No. 1, PageID.12 (alleging "IBM's corporate policies

incentivized executives to **hire and promote** individuals with favored race and sex traits")
(emphasis added); *id.* ¶ 84, PageID.13 (describing "racially preferential **hiring** and **promotion[al]**"
practices) (emphasis added); *id.* ¶ 93, PageID.14 (discussing "sex-based preferential **hiring** and
**promotions**") (emphasis added).  Such broad goals do not raise an inference that Plaintiff was
terminated on the basis of race or sex.

      Nor do Plaintiff's allegations about comments by IBM's CEO two years before Plaintiff's
termination support his claims.  *See id.* ¶¶ 61-68, PageID.10-11.  These comments focused on
IBM's hiring and recruitment goals for underrepresented groups and at no point discussed
terminating employees or race or gender quotas.  *See generally* James O'Keefe
(@JamesOKeefeIII), X (Dec. 11, 2023, 6:47 PM), https://perma.cc/2HLR-X5VT at 7:09-12:45
(cited in Compl. ¶ 62).[5]  As a matter of law, statements are "not racially discriminatory simply
because they indicate a desire to increase diversity within the [work]force."  *McCormick*, 2022
WL 16586621, at *5; *see also id.* at *5 ("[G]eneral statements that do not reference the plaintiff
and are not made within the context of an evaluation or employment decision cannot be considered
direct evidence of discrimination.") (citing *Foster v. Michigan*, 573 F. App'x 377, 393 (6th Cir.
2014)).  Particularly considering that these statements occurred two years before Plaintiff's
termination, they have no connection to the termination and are not probative even at the motion
to dismiss stage.  *See Dzibela*, 2024 WL 4349813, at *7 (granting motion to dismiss plaintiff's
"reverse discrimination" claim where defendant's CEO made statement referencing lack of
diversity in "leadership positions" four years before plaintiff's termination); *Foster*, 573 F. App'x
at 393 (collecting cases); *accord Mlynczak v. Bodman*, 442 F.3d 1050, 1057-58 (7th Cir. 2006)

---

[5]     The alleged comments made by the CEO of a separate IBM subsidiary also bear no
connection to Plaintiff's termination.

(finding that comments not connected to hiring nor made by a decisionmaker were insufficient to establish discrimination).

Ultimately, even after giving Plaintiff every benefit of the doubt, his Complaint alleges nothing more than that he is a Caucasian male who was terminated by a company that has diversity goals.  There is a mountain of federal decisions rejecting "reverse discrimination" claims in similar circumstances.[6]  The Court should add this case to the pile.

### III.    In the Alternative, Plaintiff Fails to Plead the "Background Circumstances" to Support a "Reverse-Discrimination" Claim.

For all of the reasons stated above, Plaintiff has failed to carry his basic burden under Rule 8 to state a plausible claim for race and gender discrimination under Title VII and section 1981. In the alternative, the Court should dismiss Plaintiff's Complaint because he fails to plead "background circumstances to support the suspicion that the defendant is that unusual employer who discriminates against the majority." *Ames*, 87 F.4th at 825;[7] *see also Donaldson v. DeJoy*, No. 22-1651, 2024 WL 3493870, at *3 (6th Cir. May 1, 2024) (applying "background circumstances" requirement to motion to dismiss).  The Sixth Circuit has explained that

---

[6]    *See supra* at 12-15; *see also Harkola v. Energy E. Util. Shared Servs.*, No. 09-CV-6318 (MAT), 2011 WL 3476265, at *11 (W.D.N.Y. Aug. 9, 2011) (finding that a general diversity policy was insufficient to raise an inference of discrimination); *Opsatnik v. Norfolk S. Corp.*, No. 06-81, 2008 WL 763745, at *10-11 (W.D. Pa. Mar. 20, 2008) (holding the defendant's diversity policy, without more, is not sufficient evidence of discrimination); *Jones v. Bernanke*, 493 F. Supp. 2d 18, 29 (D.D.C. 2007) ("[A]n employer's statement that it is committed to diversity 'if expressed in terms of creating opportunities for employees of different races and both genders ... is not proof of discriminatory motive with respect to any specific hiring decision.  Indeed, it would be difficult to find today a company of any size that does not have a diversity policy.'") (quoting *Bernstein v. St. Paul Cos. Inc.*, 134 F. Supp. 2d 730, 739 n.12 (D. Md. 2001)); *Reed v. Agilent Techs., Inc.*, 174 F. Supp. 2d 176, 185-86 (D. Del. 2001) ("Merely producing anecdotal evidence regarding the aspirational purpose of an employer's diversity policy, and its intent to ameliorate any underutilization of certain groups, is not sufficient.").

[7]    Although the Supreme Court recently granted certiorari to explore whether majority-group plaintiffs alleging Title VII violations must also plead "background circumstances," the current rule remains a binding Sixth Circuit pleading requirement.

"background circumstances" supporting a suspicion that an employer discriminates against the majority may include: (1) an employer's "history of improperly considering race as a factor in employment-related decisions;" (2) a "workforce [ ] predominantly comprised of minorities;" or (3) that "the person in charge of making employment decisions is a [racial or gender] minority." *Toth v. City of Toledo*, 480 F. App'x 827, 832-33 (6th Cir. 2012).

Plaintiff fails to allege facts describing any of these circumstances. IBM's diversity goals and the AIP Optional Diversity Modifier do not support an inference of historic discrimination, let alone discrimination against Caucasian or male employees. (*Supra* at 11-15). Moreover, Plaintiff does not allege that IBM as a whole, IBM Consulting, Simpler Consulting, Plaintiff's former division, or even his former immediate team is predominantly comprised of minorities—nor could he.

To be clear, Plaintiff's Complaint would fail to plausibly allege claims of race- and sex-based discrimination even in circuits that do not employ this standard.[8] His additional failure to adequately allege "background circumstances" supporting the inference that IBM is the "unusual employer who discriminates against the majority" further underscores Plaintiff's failure to plausibly plead discrimination.

---

[8]     *See, e.g.*, *De La Pena v. Metro. Life Ins. Co.*, 552 F. App'x 98, 100 (2d Cir. 2014) (affirming dismissal of Title VII race discrimination claims because "plaintiff's bald assertions of discrimination—unsupported by any meaningful comments, actions, or examples of similarly-situated persons outside of plaintiff's protected class being treated differently—were implausible and insufficient"); *Tickles v. Johnson*, 805 F. App'x 204, 208 (4th Cir. 2020) (affirming dismissal of age discrimination claim because complaint lacked specific allegations about "the qualifications and rule violations of [plaintiff's] proposed comparators, or even the proposed comparators' proximity in age to his own"); *Uppal v. Hosp. Corp. of Am.*, 482 F. App'x 394, 396 (11th Cir. 2012) (affirming dismissal of gender, race, and national origin discrimination claims due to plaintiff's failure to "supplement[] [her] allegations of disparate treatment with any factual detail, such as even a brief description of how the alleged comparator employees were outside her protected class.").

## CONCLUSION

For the foregoing reasons, IBM respectfully requests this Court dismiss the Complaint pursuant to Rule 12(b)(6).

Dated:  October 23, 2024

Respectfully submitted,

*/s/ Kyle M. Asher*
Kyle M. Asher (P80359)
Jennifer L. Beidel (P86645)
DYKEMA GOSSETT PLLC
201 Townsend Street
Suite 900
Lansing, MI 48933
Phone: 517-374-9151
Email: kasher@dykema.com
jbeidel@dykema.com

Michael E. DeLarco*
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
Phone: 212-918-3265
Email: michael.delarco@hoganlovells.com

David M. Foster*
HOGAN LOVELLS US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, D.C. 20004
Phone: 202-637-5573
Email: david.foster@hoganlovells.com

Michelle Roberts Gonzales*
HOGAN LOVELLS US LLP
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
Phone: 310-785-4670
Email: michelle.roberts.gonzales@hoganlove-
lls.com

*Counsel for Defendant International Business Machines Corporation*
*\*Applications for Admission Pending*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 23, 2024, my assistant caused the foregoing to be electronically filed with the Clerk of the Court using the electronic filing system, which will send notification of such filing to all counsel of record at their respective addresses as disclosed on the pleadings.

Dated: October 23, 2024

By: */s/ Kyle M. Asher*
    Kyle M. Asher (P80359)